# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

JOHN C DE BACA,

    Plaintiff,

v.

MICHAEL R. MEISINGER,
MIZEL A. GARCIA,
GREGORY O. GALLEGOS,
PATRICK D. BROWN,
LORENZO L. MORA, and
ERIC KUEBLER,
in their individual capacities,

    Defendants.

No. 12-CV-698-BRB/RHS

# ORDER DENYING DEFENDANTS GALLEGOS, BROWN, MORA AND KUEBLER'S MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

**BALDOCK**, Circuit Judge.[*]

    Defendants Gregory Gallegos, Patrick Brown, Lorenzo Mora, and Eric Kuebler are deputies of the Bernalillo County Sheriff's Department (BCSD). Plaintiff John C De Baca filed this § 1983 action (together with pendent state law claims) alleging, among other things, that BCSD Defendants subjected him to an unreasonable seizure in violation of the Fourth Amendment. According to Plaintiff's complaint, BCSD

---

[*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation pursuant to 28 U.S.C. § 291(b).

Defendants "seized . . . [him] in his residence without a warrant, probable cause, exigent circumstances, or other legal justification." Currently before the Court is BCSD Defendants' motion for summary judgment on the basis of qualified immunity.[1] "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable officer would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotations omitted). In contrast to a standard motion for summary judgment, which places the burden on the moving party to point out the lack of any genuine issue of material fact for trial, a motion based on qualified immunity imposes the burden on the plaintiff to show "both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation." Green v. Post, 574 F.3d 1294, 1300 (10th Cir. 2009). Applying the appropriate legal standards, the Court concludes Plaintiff has carried his burden and thus denies BCSD Defendants qualified immunity in the context of their motion for summary judgment.

I.

Viewed in a light most favorable to Plaintiff, the record reveals the following relevant facts. About 10:00 p.m. on July 5, 2010, BCSD dispatch received a call

---

[1] Defendants Michael Meisinger and Mizel Garcia, both Albuquerque Police Officers, have filed their own motion for summary judgment based on qualified immunity. That motion, which is not yet fully briefed, involves a broader set of factual circumstances and somewhat different legal considerations.

from Albuquerque Police Department (APD) dispatch requesting that the BCSD assist the APD by attempting to locate Plaintiff at "1305 Bonita Southwest," a residence within Bernalillo County but outside Albuquerque city limits. APD dispatch advised that Plaintiff was suspected of aggravated assault, or more particularly, of threatening a female with a gun. APD dispatch further advised that Plaintiff was possibly armed. In response, BCSD sent out a dispatch directed to available BCSD officers. According to BCSD Defendant Kuebler's affidavit:

> 6. At approximately 10 p.m. on July 5, 2010 a dispatch call generated to all available BCSD deputies. The dispatch advised that the APD had called BCSD dispatch to request that BCSD deputies attempt to locate an individual named John C De Baca, who had reportedly assaulted a woman. C De Baca was at a residence within Bernalillo County located at 1305 Bonito Circle SW, Albuquerque, NM 87105. Dispatch advised that if the individual was located, APD requested that he be detained until APD officers could arrive to investigate the incident. The individual was reported to be potentially armed and dangerous.
>
> 7  As is customary in situations where the potential for danger exists, four deputies, including myself, and deputies Gallegos, Brown, and Mora, all responded, indicating that we would respond to the call. At that time, each of us was driving our own BCSD marked unit.

BCSD Defendant Gallegos attests to what transpired as BCSD Defendants prepared to make contact with Plaintiff:

> 8. After the deputies arrived at the designated location, we conducted a brief perimeter check of the property and determined that the back of the house could not be accessed given the amount of debris and items located in the front yard. Because of that, two deputies stood some distance from the front door of the residence to provide coverage of the front of the house, while Deputy Kuebler and I proceeded to knock on the front door.

3

Meanwhile, Plaintiff had returned home after spending the day with his then girlfriend Cinthia and her family at Cochiti Lake.  Plaintiff attests:

9. Cinthia and I returned home at approximately 10:00 p.m.

10. Within minutes of my return home, I heard extremely loud banging on my front door.  No one identified themselves.  I opened the door, to see several BCSD deputies with guns pointed straight at me.

11. The police officer ordered me out of my house.  I did not believe I had the option to disobey, since they were pointing guns at me, and my small children were just inside.

12. Immediately after I stepped outside, the officers put me in handcuffs.  They told me I was not under arrest, but that they were detaining me for APD.  The deputies did not tell me why I was being held.  I never even had the opportunity to put my shoes on . . . .

13. I asked the deputies if they could take the handcuffs off since I was not under arrest.  They said no, and placed me in the back of one of their vehicles.

14. After some time, an APD officer came, took me out of the deputy's vehicle, put his handcuffs on me, and read me my rights.

The APD officer asked Plaintiff if he knew the complainant Anna Marie Santana.  Plaintiff said he did.  Plaintiff stated Santana previously had falsely accused him of stalking her.  The APD officer informed Plaintiff that Santana reported he kidnapped her at gun point.  As a result of Santana's complaint, Plaintiff was incarcerated at the Albuquerque Metropolitan Detention Center for two weeks, presumably until he was able to post bond.  The prosecution eventually dismissed with prejudice all charges against Plaintiff arising out of the events of July 5, 2010.

4

II.

BCSD Defendants argue they had "ample reasonable suspicion to locate and detain Plaintiff until the [APD] arrived, based on information the [APD] provided the [BCSD]."[2]  BCSD Defendants note that "limited intrusions are reasonable when officers have reason to fear for their safety or where public safety is a concern." BCSD Defendants say they "neither arrested Plaintiff nor charged him with any crime.  Rather, pursuant to APD's request, BCSD Defendants merely located and detained Plaintiff," a "potentially armed" criminal suspect.  In other words, BSCD Defendants posit Plaintiff's detention was akin to "an investigative detention" consistent with Terry v. Ohio, 392 U.S. 1 (1968).  BCSD Defendants seriously misapprehend the significance of seizing Plaintiff from his home at gunpoint.

The "sanctity of the home" lies "at the very core of the Fourth Amendment." Payton v. New York, 445 U.S. 573, 589–90 (1980).  Accordingly, whether a seizure occurring in the home amounts to an arrest, or is simply an investigative detention,

---

[2] For present purposes, the Court simply *assumes* that BCSD Defendants were entitled to rely on the information they received from BCSD dispatch.  Cf. United States v. Hensley, 469 U.S. 221, 232 (1985) ("If [a] flyer has been issued in the absence of reasonable suspicion, then a stop [outside the home] in the objective reliance upon it violates the Fourth Amendment.  In such a situation, of course, the officers making the stop may have a . . . defense to any civil suit."); Feathers v. Aey, 319 F.3d 843, 851 (6th Cir. 2003) ("Although this information was from an anonymous tipster, whose information was not sufficient to create reasonable suspicion [for a stop outside the home] . . . , the officers knew only what had been reported from the dispatch, and efficient law enforcement requires—at least for purposes of determining the civil liability of individual officers—that police be permitted to rely on information provided by the dispatcher.")

is "meaningless." United States v. Reeves, 524 F.3d 1161, 1166 (10th Cir. 2008). "In this sense, *Terry* stops have no place in the home." Armijo ex rel. Sanchez v. Peterson, 601 F.3d 1065, 1073 (10th Cir. 2010). To seize a person from his home "for a routine investigatory purpose, police must have [1] exigent circumstances and probable cause, or [2] a warrant, 'no matter whether the seizure is an investigatory stop or an arrest.'" Storey v. Taylor, 696 F.3d 987, 992 (10th Cir. 2012) (holding plaintiff was seized from his home where an officer knocked unannounced and pulled him out of the home after he refused to step outside). Absent a warrant or probable cause coupled with exigent circumstances, "a show of force [such] that a suspect comes out of his home under coercion and submits to be taken into custody" violates the Fourth Amendment. United States v. Maez, 872 F.2d 1444, 1451 (10th Cir. 1989).

Here, BCSD Defendants had no warrant and they do not argue that probable cause and exigent circumstances justified their warrantless seizure of Plaintiff from his home. Perhaps this is because the information BCSD possessed, namely that (1) Plaintiff was suspected of committing an aggravated assault with a gun within the City of Albuquerque sometime prior, (2) Plaintiff was "potentially armed and dangerous," and (3) BCSD Defendants should proceed with caution, was insufficient to justify ordering Plaintiff out of his home at gunpoint after pounding on his front door unannounced. See Reeves, 524 F.3d at 1165 (explaining the location of the detained person rather than the detaining officers determines whether a detention

6

occurs within the home). Where police officers acting in reliance on a dispatch report have a *sufficient factual basis* to believe they are in compliance with the law, they may be entitled to qualified immunity. See Humphrey v. Mabry, 482 F.3d 840, 847 (6th Cir. 2007). But BCSD Defendants had no factual or legal basis for seizing Plaintiff from his home, and a reasonable officer cognizant of the law would have well understood that.

Certainly, the risk of harm to the police or other persons inside or outside the dwelling justify a warrantless intrusion into the home. See Minnesota v. Olson, 495 U.S. 91, 100 (1990) (exigent circumstances did not exist where the driver of a getaway car fled the scene of a robbery and murder and was inside the home with two individuals "with no suggestion of danger to them"). But the risk of harm must be "immediate." Storey, 696 F.3d at 992–93. In other words, a warrant is required to seize a person from his home "unless the exigencies of the situation make the needs of law enforcement *so compelling* that the warrantless [seizure] is objectively reasonable." Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (emphasis added) (internal quotations omitted). Here, the facts known to BCSD Defendants did not give rise to an "immediate" risk of harm to anyone. By securing the premises, BCSD Defendants could have made sure that Plaintiff, if he was in the home, was going nowhere pending the APD's arrival.

On the record before the Court, BCSD Defendants violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures. That right was clearly

established in light of the specific facts presented. Accordingly, BCSD Defendants'

motion (Doc. # 42) for summary judgment based on qualified immunity is DENIED.[3]

BCSD Defendants' motion (Doc. # 43) to stay discovery pending resolution of their

motion for summary judgment is DENIED as moot.

    SO ORDERED.

                              Entered for the Court
                              this 19th day of March, 2013


                              Bobby R. Baldock
                              United States Circuit Judge
                              Sitting By Designation

---

[3] BCSD Defendants' motion for summary judgment on Plaintiff's state claims for false arrest and false imprisonment based on a breach of statutory and common law duties under New Mexico law is similarly DENIED. The federal doctrine of qualified immunity does not apply to state law claims. See Jenkins v. City of New York, 478 F.3d 76, 86 (2d Cir. 2007) (citing cases). False arrest or false imprisonment occurs in New Mexico when the "facts available to a detaining officer would not warrant a person of reasonable caution to believe detention appropriate." Fuerschbach v. Southwest Airlines, Inc., 439 F.3d 1197, 1207 (10th Cir. 2006) (internal quotations and brackets omitted). Only an officer "possessed of a good faith *and* reasonable belief in the lawfulness of the action is not liable for false arrest or false imprisonment." Id. (emphasis added). The Court has already concluded based on the facts presented that a reasonable officer would have known that seizing Plaintiff from his home violated his Fourth Amendment right to be free from unreasonable seizures.