UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

| | |
|---|---|
| JOHN C DE BACA,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL R. MEISINGER,<br>GREGORY O. GALLEGOS,<br>PATRICK D. BROWN,<br>LORENZO L. MORA, and<br>ERIC KUEBLER,<br>in their individual capacities,<br><br>    Defendants. | No. 12-CV-698-BRB/RHS |

**ORDER DENYING DEFENDANTS GALLEGOS, BROWN, MORA
AND KUEBLER'S SECOND MOTION FOR SUMMARY JUDGMENT**

**BALDOCK**, Circuit Judge.[*]

    Defendants Gregory Gallegos, Patrick Brown, Lorenzo Mora, and Eric Kuebler are deputies of the Bernalillo County Sheriff's Department (BCSD). Plaintiff John C De Baca filed this § 1983 action (together with pendent state law claims for false arrest and false imprisonment) alleging, among other things, that BCSD Defendants subjected him to an unreasonable seizure in violation of the Fourth Amendment. According to Plaintiff's complaint, BCSD Defendants "seized . . . [him] in his residence without a warrant, probable

---

    [*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation pursuant to 28 U.S.C. § 291(b).

cause, exigent circumstances, or other legal justification." In a written order, entered March 19, 2013 (Doc. #50), this Court denied BCSD Defendants qualified immunity in the context of their first motion for summary judgment. The Court held the facts known to BCSD Defendants did not constitute exigent circumstances sufficient to support their warrantless seizure of Plaintiff from his home at gunpoint. The Court further held a reasonable officer cognizant of the law would have then understood Plaintiff's seizure was unconstitutional. The Court need not now repeat all the facts, law, and analysis contained in its March 19 order. Rather, the Court simply incorporates that order into this one and makes it a part hereof. This brings us to BCSD Defendants' second motion for summary judgment, which amounts to nothing more than a motion to reconsider the Court's March 19 order. The motion is denied.

Only two of BCSD Defendants' most recent arguments bear upon the outcome here. BCSD Defendants first argue exigent circumstances justified their warrantless seizure of Plaintiff from inside his home. BCSD Defendants did not detail this argument the first time around, and for good reason—it is meritless. The law has long been that a warrant is required to seize a person from his home "unless the exigencies of the situation make the needs of law enforcement *so compelling* that the warrantless search [or seizure] is objectively reasonable."[1] Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (emphasis added) (internal

---

[1] In Payton v. New York, 445 U.S. 573, 589 (1980), the Supreme Court explained that "any differences in the intrusiveness of entries to search and entries to [seize] are merely ones of degree rather than kind. The two intrusions share this fundamental characteristic: the breach of the entrance to an individual's home."

quotations omitted). Absent exigent circumstances, a warrantless seizure from the home is unconstitutional even when the suspect is wanted for committing a felony and probable cause is present. See Payton v. New York, 445 U.S. 573, 588 (1980). Exigent circumstances exist only when a "plausible claim of specially pressing or urgent law enforcement need" presents itself. Illinois v. McArthur, 531 U.S. 326, 331 (2001). For BCSD Defendants to rely successfully upon the "risk-of-danger" exception to the Fourth Amendment's warrant requirement, they "must show that there was a risk of serious physical injury posed to the officers or others that required swift action." Cortez v. McCauley, 478 F.3d 1108, 1124 (10th Cir. 2007) (en banc) (internal quotations omitted). Minnesota v. Olson, 495 U.S. 91 (1990), illustrates the point. In Olson, the Supreme Court held exigent circumstances did not justify officers' warrantless entry into a residence where the driver of a getaway car, who had fled the scene of an *armed robbery and murder*, was inside with two individuals "with no suggestion of danger to them." Id. at 100.

Given the facts and law recited in its March 19 order, this Court could not conclude as a matter of law that exigent circumstances justified the warrantless seizure of Plaintiff from his home or that a reasonable officer would not have understood the unconstitutionality of Plaintiff's seizure. Nothing has changed since then. In his revised affidavit, BCSD Defendant Gallegos describes the difficulty in accessing Plaintiff's home due to the clutter in the yard and the lack of porch or street lights. Yet some yards are tidy; some yards are not. Some homes are illuminated; some homes are not. Surely these are important considerations when police officers seek to execute an arrest warrant at a residence during nighttime hours.

But a failure to keep one's yard free of clutter or illuminate one's house at night, *when all else appears unremarkable*, hardly gives rise to a "plausible claim of specially pressing or urgent law enforcement need" to conduct a warrantless seizure of a criminal suspect from his home. McArthur, 531 U.S. at 331; cf. United States v. Martinez, 643 F.3d 1292, 1297 (10th Cir. 2011) ("A person's failure to keep an orderly home should not subject him or her to a warrantless search by police.").

Simply put, no *objectively apparent immediate* risk of harm to anyone—neither to BCSD Defendants, those inside the home, the putative victim, nor the public—existed at the time BCSD Defendants seized Plaintiff.[2] See Armijo ex rel. Sanchez v. Peterson, 601 F.3d 1065, 1070 (10th Cir. 2010) (explaining exigency exists where officers have an "objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others"). That is to say, BCSD Defendants were not "confronted with reasonable grounds to believe there was an immediate need [to seize Plaintiff] guided by the realities of the situation presented by the record from the viewpoint of prudent, cautious, and trained officers." United States v. Najar, 451 F.3d 710, 718–19 (10th Cir. 2006) (internal quotations omitted).

---

[2] BCSD Defendants' ongoing reliance on the "collective knowledge doctrine" is unhelpful. Under the doctrine, the knowledge of one officer may be imputed to another. See United States v. Whitley, 680 F.3d 1227, 1233–34 (10th Cir. 2012). In this case, APD Defendant Meisinger by way of dispatch conveyed to BCSD Defendants a description of the crime and suspect, the suspect's possible location, and an admonition to use caution. BCSD Defendants point to no further information Meisinger possessed that might support BCSD Defendants' claim that the exigencies of the situation justified Plaintiff's warrantless seizure. Consistent with footnote 2 of its March 19, 2013 order, the Court continues to assume BCSD Defendants were entitled to rely on the information they received from Meisinger via dispatch.

Second, BCSD Defendants argue in the alternative that because Plaintiff opened his front door after they knocked (the door opened to the inside), he was in a public space when they seized him: "Once Plaintiff voluntarily opened the door, his detention at the threshold of his house was public, even if [BCSD] Defendants displayed their weapons, because [BCSD] Defendants did not coerce Plaintiff to open his door." Any assertion that Plaintiff "voluntarily opened the door" for BCSD Defendants, however, is in tension with ¶ 14 of BCSD Defendant Gallegos' revised affidavit:

> Deputy Kuebler and I proceeded to knock on the front door and announce our presence. Although I understand that Plaintiff has testified that we did not announce ourselves at the time that we knocked on the door, *it is a routine procedure to announce our presence whenever we attempt contact with an individual at a residence, in order to show our authority and gain compliance from those within a residence*.

(emphasis added). "Opening the door to one's house is not voluntary if ordered to do so under color of authority." United States v. Reeves, 524 F.3d 1161, 1167 (10th Cir. 2008). Similarly, any claim BCSD Defendants seized Plaintiff "at the threshold of his house" appears to contradict ¶ 16 of the same affidavit: "*Allowing Mr. C de Baca to remain inside his residence was not a viable option* based on the information we had." (emphasis added). This is just another way of acknowledging BCSD Defendants seized Plaintiff from inside his home. See Reeves, 524 F.3d at 1165 ("[A]lthough the officers were positioned outside the motel room, Reeves was inside his room at the time he opened his door and we analyze this encounter as occurring within his home.").

What BCSD Defendants really ask (again) is that this Court apply the law of investigatory stops announced in Terry v. Ohio, 392 U.S. 1 (1968), to justify Plaintiff's seizure. But what BCSD Defendants fail to acknowledge is that the Supreme Court has long regarded "the area 'immediately surrounding and associated with the home ' as 'part of the home itself for Fourth Amendment purposes.'" Florida v. Jardines, 133 S. Ct. 1409, 1414 (2013) (quoting Oliver v. United States, 466 U.S. 170, 180 (1984)). "The front porch is the classic exemplar of an area adjacent to the home and 'to which the activity of home life extends.'" Id. at 1415 (quoting Oliver, 466 U.S. at 182 n.12). BCSD Defendants, like any private citizen, "could have lawfully approached [Plaintiff's] home to knock on the front door in hopes of speaking with him. Of course, that is not what they did." Id. at 1415 n.1 (2013). As the Tenth Circuit recently explained in United States v. Shuck, 713 F.3d 563, 568 (10th Cir. 2013), the door of the home "is an area that police may approach even without reasonable suspicion *if they have a 'knock and talk' purpose*." (emphasis added) (citing United States v. Cruz-Mendez, 467 F.3d 1260, 1264–65 (10th Cir. 2006)).

The facts taken in a light most favorable to Plaintiff do not present the scenario of an initially consensual, knock-and-talk encounter where a suspect is subsequently seized near the entrance of his home. See Lundstrom v. Romero, 616 F.3d 1108, 1121–22 (10th Cir. 2010); Reeves, 524 F.3d at 1166 & nn.3–5. BCSD Defendants did little talking, let alone investigating, after Plaintiff opened the door to an overwhelming show of force. Rather, once Plaintiff identified himself, BCSD Defendants, with weapons still drawn, ordered him out of his house. Plaintiff complied whereupon BCSD Defendants promptly handcuffed him

and placed him in the back of a squad car.

> 10. Within minutes of my return home, I heard extremely loud banging on my front door. . . . I opened the door, to see several BCSD deputies with guns pointed straight at me.
>
> 11. The police ordered me out of my house. I did not believe I had the option to disobey, since they were pointing guns at me, and my small children were just inside.
>
> 12. Immediately after I stepped outside, the officers put me in handcuffs. They told me . . . that they were detaining me for APD. The deputies did not tell me why I was being held.

No police officer has an implied license to stand at the front door of a home for the avowed purpose of coercing the homeowner out of his house at gunpoint for whatever reason, even if preceded by a knock on the door. This is nothing short of an unlicensed nonconsensual physical intrusion. "There is no customary invitation to do that." Jardines, 133 S. Ct. at 1416. The "background social norms that invite a visitor to the front door do not invite him there to conduct a search [or seizure]." Id. That is precisely why the Fourth Amendment requires a warrant absent exigent circumstances. Terry's application in this case would turn the Fourth Amendment's warrant requirement and longstanding precedent construing it upside down. For instance, in United States v. Maez, 872 F.2d 1444, 1451 (10th Cir. 1989), a case preceding the events here in question by over two decades, the Tenth Circuit explained that absent exigent circumstances, Payton "is violated where there is such a show of force that a defendant comes out of a home under coercion and submits to being taken into custody." That explanation sufficiently governs this case.

Without a warrant, and with no suggestion of any imminent risk of harm to anyone, BCSD Defendants seized Plaintiff from his home at the outset of their encounter by an overwhelming display of lethal force. Because the facts of this case viewed in a light most favorable to Plaintiff present a textbook example of a warrantless seizure from the home in clear violation (now and then) of the Fourth Amendment, BCSD Defendants second motion for summary judgment (Doc. #85) is —

DENIED.[3]

                      Entered for the Court
                      this 30th day of August, 2013


                      Bobby R. Baldock
                      United States Circuit Judge
                      Sitting by Designation

---

[3] For the reasons stated in footnote 3 of the Court's March 19, 2013 order, BCSD Defendants' second motion for summary judgment on Plaintiff's state claims for false arrest and false imprisonment under New Mexico law is similarly DENIED.