UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

JOHN C DE BACA,

    Plaintiff,

v.

MICHAEL R. MEISINGER,
GREGORY O. GALLEGOS,
PATRICK D. BROWN,
LORENZO L. MORA, and
ERIC KUEBLER,
in their individual capacities,

    Defendants.

No. 12-CV-698-BRB/RHS

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY AGAINST DEFENDANTS GALLEGOS, BROWN, MORA, AND KUEBLER**

**BALDOCK**, Circuit Judge.[*]

    Defendants Gregory Gallegos, Patrick Brown, Lorenzo Mora, and Eric Kuebler are deputies of the Bernalillo County Sheriff's Department (BCSD). Plaintiff John C De Baca filed this § 1983 action (together with pendent state law claims for false arrest and false imprisonment) alleging, among other things, that BCSD Defendants subjected him to an unreasonable seizure in violation of the Fourth Amendment. According to Plaintiff's

---

[*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation pursuant to 28 U.S.C. § 291(b).

complaint, BCSD Defendants "seized . . . [him] in his residence without a warrant, probable cause, exigent circumstances, or other legal justification." In written orders entered March 19, 2013 (Doc. #50), and earlier today, August 30, 2013 (Doc. #99), this Court, applying the proper qualified immunity standards, denied BCSD Defendants immunity in the context of their first and second motions for summary judgment. The Court need not repeat here all that is contained in those orders. Rather, the Court assumes the reader's familiarity with them. Now before the Court is Plaintiff's own motion for partial summary judgment seeking to hold BCSD Defendants liable for that seizure—a seizure no one disputes—as a matter of law. The motion is granted.

Under Fed. R. Civ. P. 56(a), this Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In determining whether a genuine issue of material fact exists, the Court views the evidence in the light most favorable to the party opposing the motion. See generally Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The general Fourth Amendment inquiry in this case is whether any reasonable juror could find BCSD Defendants had an objectively reasonable basis to seize Plaintiff from his home without a warrant. The historical facts of which BCSD Defendants had knowledge at the time they seized Plaintiff are largely undisputed. The Court notes any disagreement.

I.

Around 9:30 p.m. on July 5, 2010, Anna Marie Santana called 911. Officer Michael Meisinger of the Albuquerque Police Department (APD) responded to her call. Santana

reported her "ex-boyfriend" John C De Baca had grabbed her in an alley near Presbyterian Hospital around 9:00 p.m. that same evening, placed a handgun to her temple, and threatened to kill her. Based on Santana's report, Officer Meisinger contacted APD dispatch to request assistance from BCSD.[1] According to the revised affidavit of BCSD Defendant Gallegos, which is substantially consistent with his and other BCSD Defendants' prior affidavits:

> 6. Shortly after 10:00 p.m. on July 5, 2010, BCSD dispatch advised all available units that [APD] was requesting BCSD assistance in locating a suspect named John C de Baca at 1305 Bonito Circle SW [a residence within Bernalillo County but outside Albuquerque city limits] . . . . APD had advised BCSD dispatch that the individual had pointed a gun at a female's head, was potentially armed and dangerous, and that the deputies should proceed with caution.

Gallegos attests to what transpired after the four BCSD Defendants arrived at Plaintiff's residence:

> 11. Deputies Mora and Brown intended to secure the back of the property. However, during our brief perimeter check of the property, we determined that the back of the house was totally inaccessible, and the majority of the front of the property was almost completely inaccessible due to miscellaneous equipment, objects, debris and junk blocking the entire area. . . . From the street to the front door was a narrow path lined with debris and junk on either side. Such a condition is known as a "fatal funnel" in law enforcement circles, which means that any attempt to enter such areas must be done carefully because a deputy could easily be shot or attacked and have no place to retreat.
>
> 12. In addition to the limited access to the front door, and lack of access to the back door, the house was pitch black because there were no street lights in the area, and the house was not illuminated from the outside.

---

[1] Plaintiff has filed a separate motion for partial summary judgment seeking to hold APD Defendant Meisinger liable for his conduct in relation to the events of July 5, 2010. The Court shall address that motion, which involves a broader set of facts and a different legal analysis, in a separate order.

> 13. Because of all these factors, and the information we received through BCSD dispatch, we reasonably believed that the only way to ensure the safety of the deputies and the public at large was to make contact with Mr. C de Baca and immediately detain him.

BCSD Defendants Mora and Brown assumed positions some distance from the front door of Plaintiff's residence to provide cover. BCSD Defendants Gallegos and Kuebler knocked on the front door and announced their presence.[2] BCSD Defendants do not deny that Plaintiff, in his own words, "opened the door, to see several BCSD deputies with guns pointed straight at me." Once Plaintiff identified himself, one or more BCSD Defendants ordered him to step outside. Plaintiff attests that he "did not believe [he] had the option to disobey, since they were pointing guns at me, and my small children were just inside."[3] According to ¶ 16 of Gallegos' revised affidavit, BCSD Defendants had "formed the reasonable belief that immediately detaining Mr. C de Baca until the arrival of the APD officers was warranted. Allowing Mr. C de Baca to remain inside his residence was not a viable option based on the information we had."

---

[2] Gallegos hedges somewhat in ¶ 14 of his revised affidavit: "Although I understand that Plaintiff has testified that we did not announce ourselves . . . , it is a routine procedure to announce our presence whenever we attempt contact with an individual at a residence, in order to show our authority and gain compliance from those within the residence."

[3] Gallegos again hedges in ¶ 15 of his affidavit: "Although neither I nor the other deputies have an independent recollection of drawing our weapons at that time, such a practice is totally consistent with the information we were acting upon at the time . . . . It would be wholly inconsistent with our training or experience to attempt contact with a suspect under these circumstances without a show of force to both protect ourselves and gain the suspect's immediate compliance."

II.

In Payton v. New York, 445 U.S. 573, 576 (1980), the Supreme Court held that, absent exigent circumstances, police officers may not enter an individual's home to make a nonconsensual warrantless seizure, even with probable cause. "In terms that apply equally to [searches for] property and seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."[4] Id. at 590. In United States v. Maez, 872 F.2d 1444, 1451 (10th Cir. 1989), the Tenth Circuit held that "Payton is violated where there is such a show of force that a defendant comes out of a home under coercion and submits to being taken into custody. . . . [I]t is the location of the [seized] person, and not the [seizing] agents, that determines whether [a seizure] occurs within a home." Accordingly, law enforcement officers must procure an arrest warrant where a criminal suspect has taken shelter inside his residence "unless the exigencies of the situation make the needs of law enforcement *so compelling* that the warrantless search [or seizure] is objectively reasonable." Brigham City v. Stuart, 547 U.S. 398, 403 (2006) (emphasis added). "[T]he police bear a heavy burden," the Supreme Court has cautioned, "when attempting to demonstrate an urgent need that might justify warrantless searches [and seizures]." Welsh v. Wisconsin, 466 U.S. 740, 749–50 (1984).

---

[4] "[L]abeling an encounter in the home as either an investigatory stop or an arrest is meaningless because Payton's requirements apply to all seizures." United States v. Reeves, 524 F.3d 1161, 1166 (10th Cir. 2008).

5

Exigent circumstances justifying a warrantless seizure from the home exist when a "plausible claim of specially pressing or urgent law enforcement need" presents itself. Illinois v. McArthur, 531 U.S. 326, 331 (2001); accord Cortez v. McCauley, 478 F.3d 1108, 1124 (10th Cir. 2007) (en banc). Minnesota v. Olson, 495 U.S. 91 (1990), stands for the proposition that the gravity of the offense *alone* does not give rise to such a plausible claim. In Olson, the driver of a getaway car who had fled the scene of an armed robbery and murder was inside his overnight residence with two individuals "with no suggestion of danger to them." Id. at 100. The Court explained a warrantless intrusion into the home may be justified by the (1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) need to prevent a suspect's escape, or (4) risk of danger to the police or to other persons inside or outside the dwelling.[5] Because none of these exceptions to the Fourth Amendment's warrant requirement were present in Olson, the Supreme Court held police officers' warrantless entry into the suspect's residence to arrest him was unreasonable and unconstitutional. See Welsh, 466 U.S. at 752 (noting "courts have permitted warrantless home [seizures] for major felonies if identifiable exigencies, independent of the gravity of the offense, existed at the time of the [seizure]").

A.

In this case, BCSD Defendants first seek to justify their warrantless seizure of Plaintiff

---

[5] In Storey v. Taylor, 696 F.3d 987, 993 (10th Cir. 2012), the Tenth Circuit observed that a warrantless seizure from the home may also be justified if an officer is acting in a "community caretaking" role "wholly separate and apart from detecting, investigating, or acquiring evidence of a crime." (internal quotations omitted).

based on the risk of danger.  The Court's specific inquiry is whether any reasonable juror could find BCSD Defendants had an "objectively reasonable basis to believe there [was] an *immediate* need [to seize Plaintiff from his home] to protect the lives or safety of themselves or others."[6]  United States v. Najar, 451 F.3d 710, 718 (10th Cir. 2006) (emphasis added).  BCSD Defendants point to the following facts received from APD Officer Meisinger via dispatch: (1) Plaintiff had committed an aggravated assault with a gun that same evening, (2) Plaintiff was possibly armed and dangerous, and (3) BCSD should proceed with caution in seeking to locate Plaintiff.  BCSD Defendants also point to facts they observed after arriving at Plaintiff's residence as outlined in Gallegos' revised affidavit: (4) The "back of the house was totally inaccessible" due to clutter and debris, (5) the "majority of the front of the property was almost completely inaccessible" due to clutter and debris, and (6) the "house was pitch black" due to the lack of illuminated porch or street lights.

The first three facts relate to the gravity of the offense.  A crime in the nature of an aggravated assault with a firearm is undoubtedly serious.  But Olson teaches us that the seriousness of the offense, apart from additional identifiable exigencies, will not suffice to

---

[6] Neither side addresses whether a *civil* jury in a § 1983 action resolves the question of exigency or whether the jury's role is simply to find facts upon which the Court then relies to resolve that ultimate question.  Compare Sherouse v. Ratchner, 573 F.3d 1055, 1059 (10th Cir. 2009) ("[I]n a damages action based on an alleged Fourth Amendment violation the reasonableness of a search or seizure is a question for the jury."), with Kerns v. Bader, 663 F.3d 1173, 1191 n.1 (10th Cir. 2011) (Holloway, J., dissenting) ("The existence *vel non* of exigent circumstances is a mixed question of fact and law.  The ultimate question whether the facts as found by the jury meet the legal standard of exigency is a question of law." (internal citation omitted)).  Either way in this case BCSD Defendants lose.  No reasonable judge or jury could conclude upon the record evidence that exigent circumstances justified Plaintiff's warrantless seizure.

justify BCSD Defendants actions in this case.  The Tenth Circuit too has recognized that "[a]lthough the gravity of the crime cannot itself create sufficient exigency for a warrantless search [or seizure], independent exigent circumstances can justify Fourth Amendment intrusions when the police are investigating grave crimes."  United States v. Aquino, 836 F.2d 1268, 1271–72 (10th Cir. 1988) (internal citation omitted).  Indeed, this Court is unaware of any case where the seriousness of the offense alone was held to justify a warrantless search or seizure inside the home.

That brings the Court to the latter three facts on which BCSD Defendants rely to establish exigency.  These facts address the condition of the premises surrounding Plaintiff's residence on July 5, 2010.  Such condition in turn bore upon the difficulty BCSD Defendants faced in making contact with Plaintiff, warrant or no warrant.  As this Court observed in its order entered earlier today denying BCSD Defendants' second motion for summary judgment:

> Surely these factors are important considerations when police officers seek to execute an arrest warrant at a residence during nighttime hours.  But a failure to keep one's yard free of clutter or illuminate one's house at night, *when all else appears unremarkable*, hardly gives rise to a "plausible claim of specially pressing or urgent law enforcement need" to conduct a warrantless seizure of a criminal suspect from his home.  McArthur, 531 U.S. at 331; cf. United States v. Martinez, 643 F.3d 1292, 1297 (10th Cir. 2011) ("A person's failure to keep an orderly home should not subject him or her to a warrantless search by police.").

The sanctity of the home is too important to be violated by the *mere possibility* of danger and any adverse consequence that might arise therefrom—"such a 'possibility' is ever-present." Martinez, 643 F.3d at 1300.  That is why exigent circumstances must exist before police

8

officers may lawfully seize a criminal suspect from inside his home without a warrant. Justice Jackson once observed that "[w]hen an officer undertakes to act as his own magistrate, he ought to be in a position to justify it by pointing to some real immediate and serious consequence if he postponed action to get a warrant." McDonald v. United States, 335 U.S. 451, 460 (1948) (Jackson, J., concurring).

BCSD Defendants fail to point to any specific fact, other than the gravity of the reported crime, that might have led a "prudent, cautious, and trained" officer to believe Plaintiff posed an *immediate* threat to themselves or others inside or outside the home. Najar, 451 F.3d at 719. Absolutely nothing around or about Plaintiff's home provided any visual or audible indication of past, present, or future violence, or possible flight. All appeared quiet and normal to the senses. Based on the record facts properly viewed, the Court concludes as a matter of law that no objectively apparent immediate risk of harm to anyone—neither to BCSD Defendants, those inside the home, the putative victim, nor the public—justified BCSD Defendants greeting Plaintiff at his front door with guns drawn. Exigent circumstances are wholly lacking in the case.

B.

In the alternative, BCSD Defendants say the question of exigent circumstances is beside the point because they seized Plaintiff in a public place: "Once Plaintiff voluntarily opened the door, his detention at the threshold of his house was in public, even if [BCSD] Defendants displayed their weapons, because [BCSD] Defendants did not coerce Plaintiff to open his door." Even accepting that Plaintiff willingly opened his front door (the door

9

opened to the inside) after BCSD Defendants knocked and announced their presence, "his detention at the threshold of his house" most assuredly did not occur in a public place. BCSD Defendants entered a part of Plaintiff's home when they entered the space adjacent to the home's front door. The Supreme Court has long regarded "the area 'immediately surrounding and associated with the home' as 'part of the home itself for Fourth Amendment purposes.'" Florida v. Jardines, 133 S. Ct. 1409, 1414 (2013) (quoting Oliver v. United States, 466 U.S. 170, 180 (1984)). "The front porch is the classic exemplar of an area adjacent to the home and "to which the activity of home life extends." Id. at 1415 (quoting Oliver, 466 U.S. at 182 n.12.).

To be sure, Plaintiff's expectation of privacy outside the front door of his dwelling was appreciably less than inside that door. This is why the Fourth Amendment did not prohibit BCSD Defendants from approaching Plaintiff's home to knock on the front door in hopes of speaking with him. "A police officer not armed with a warrant may approach a home and knock, precisely because that is no more than any private citizen might do." Id. at 1416 (internal quotations omitted). In such instance, the law considers the police officer, like the private citizen, an implied licensee. Id. at 1415. The scope of the license, however, "is limited not only to a particular area but also to a specific purpose." Id. at 1416. This means the front door of a home "is an area that police may approach even without reasonable suspicion *if they have a 'knock and talk' purpose*." United States v. Shuck, 713 F.3d 563, 568 (10th Cir. 2013) (emphasis added). This of course was not BCSD Defendants' purpose.

BCSD Defendants did little talking, let alone investigating, after Plaintiff "opened the door, to see several BCSD deputies with guns pointed straight at me." They asked Plaintiff to identify himself, which he promptly did, and ordered him outside. Believing he had no choice, Plaintiff complied, was handcuffed, and placed in the back seat of a squad car to await the arrival of APD. BCSD Defendants sole purpose in approaching Plaintiff's front door was to seize him on behalf of the APD, plain and simple. Gallegos attests that before ever contacting Plaintiff, BCSD Defendants "believed that the only way to ensure the safety of the deputies and the public at large was to make contact with Mr. C de Baca and *immediately* detain him." (emphasis added).

Unlike the facts in the cases BCSD Defendants cite, the facts here do not present the scenario of a lawful knock and talk or other consensual encounter that subsequently evolved into something more serious. See, e.g., Lundstrom v. Romero, 616 F.3d 1108, 1121–22 (10th Cir. 2010); Reeves, 524 F.3d at 1166 & nn.3–5. Without a warrant and with no suggestion of any imminent risk of harm to anyone, BCSD Defendants at the outset of the encounter with Plaintiff seized him from his home by an overwhelming display of force. Whether this amounted to an objectively reasonable seizure depended on whether the law permitted BCSD Defendants to attempt to contact Plaintiff by knocking on his front door. And that in turn depended on whether they sought to contact Plaintiff for a lawful purpose. See Jardines, 133 S. Ct. at 1416–17. Of course, no police officer or anyone else has an implied license to stand at the front door of a home for the avowed purpose of coercing the homeowner out of his house at gunpoint, even if preceded by a knock on the door. Here,

11

both BCSD Defendants' statements and behavior objectively reveal their sole purpose was to seize Plaintiff from his home without a warrant to await arrival of APD. No factfinder properly instructed in the law would think it reasonable for BCSD Defendants to have done so absent exigent circumstances.

Accordingly, Plaintiff's motion for partial summary judgment as to liability against BCSD Defendants is—

GRANTED.[7]

                                            Entered for the Court
                                            this 30th day of August, 2013


                                            Bobby R. Baldock
                                            United States Circuit Judge
                                            Sitting by Designation

---

[7] Plaintiff's motion for partial summary judgment against BCSD Defendants as to liability on his state claims for false arrest and false imprisonment based on a breach of statutory and common law duties under New Mexico law is similarly GRANTED. False arrest or false imprisonment occurs in New Mexico when "the facts available to a detaining officer would not warrant a person of reasonable caution to believe detention appropriate." Fuerschbach v. Southwest Airlines, Inc., 439 F.3d 1197, 1207 (10th Cir. 2006) (internal quotations and brackets omitted). Only an officer "possessed of a good faith *and* reasonable belief in the lawfulness of the action is not liable for false arrest or false imprisonment." Id. (emphasis added). For the reasons stated herein, no factfinder could conclude that BCSD Defendants' belief that they had authority to seize Plaintiff from his home was reasonable.