**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| JOHN C DE BACA,<br><br>　　　Plaintiff,<br><br>v.<br><br>MICHAEL R. MEISINGER,<br>GREGORY O. GALLEGOS,<br>PATRICK D. BROWN,<br>LORENZO L. MORA,<br>and ERIC KUEBLER,<br>in their individual capacities,<br><br>　　　Defendants. | No. 12-CV-698-BRB/RHS |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY AGAINST DEFENDANT MEISINGER**

**BALDOCK**, Circuit Judge.[*]

　　Defendant Michael Meisinger is an officer of the Albuquerque Police Department (APD). Plaintiff John C De Baca filed this § 1983 action (together with pendent state law claims for false arrest and false imprisonment) alleging APD Defendant Meisinger, among others, violated his Fourth Amendment rights. Two of Plaintiff's claims against Defendant Meisinger are still at issue. First, Plaintiff claims Meisinger caused Plaintiff to be subjected

---

[*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation pursuant to 28 U.S.C. § 291(b).

to a warrantless seizure from his home absent exigent circumstances. Second, Plaintiff claims Meisinger, subsequent to that seizure, arrested him without probable cause. This case has a storied history as told in four written orders the Court has entered on four prior motions for summary judgment. In the one order (Doc. # 59) specifically addressing Plaintiff's two claims against APD Defendant Meisinger, entered May 21, 2013, this Court denied Meisinger qualified immunity on both claims in the context of his motion for summary judgment. (The Court granted Meisinger qualified immunity on a third claim no longer at issue). Neither the historical undisputed facts nor the law recited at length in that order have changed. All the Court said there, in particular at pages 1–15, need not be repeated here. Rather, the Court simply incorporates that order into this one, making it a part hereof. Now before the Court is a fifth motion for summary judgment in which Plaintiff seeks to hold APD Defendant Meisinger liable as a matter of law on both claims. Under Fed. R. Civ. P. 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In determining whether a genuine issue of material fact exists, the Court views the evidence in the light most favorable to the party opposing the motion. See generally Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). Applying this standard, the Court grants Plaintiff's motion in part and denies it in part.

*Claim I–Initial Seizure*

The Court's other three orders (Doc. ## 50, 99, 100) address Plaintiff's claim that Defendants Gallegos, Brown, Mora, and Kuebler, deputies of the Bernalillo County Sheriff's

Department (BCSD), unlawfully seized him from his home. The Court too assumes the reader's familiarity with those orders, which reject for numerous reasons any suggestion that Plaintiff's initial seizure was lawful. In its most recent order (Doc. # 100), the Court granted Plaintiff summary judgment on this claim against BCSD Defendants, holding as a matter of law that those Defendants unlawfully seized Plaintiff.

The only remaining question regarding Plaintiff's initial seizure is whether APD Defendant Meisinger is liable for having caused it. Section 1983 imposes liability on a police officer who "causes" a person "to be subjected" to a constitutional deprivation. The requisite causal connection is satisfied if the officer set in motion a series of events that he "knew or reasonably should have known" would cause others to deprive that person of his constitutional rights. Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012). Causation in a § 1983 case "is generally a question of fact for the jury." Schneider v. City of Grand Junction Police Dept., 717 F.3d 760, 778 (10th Cir. 2013).

In its May 21 order, the Court concluded a reasonable jury could infer that dispatch's directive to BCSD Defendants to "detain" Plaintiff if located at his residence originated with APD Defendant Meisinger. Relying on that directive, the jury also could find Meisinger "reasonably should have known" BCSD Defendants would unlawfully seize Plaintiff from his home. But a reasonable jury, accepting all reasonable inferences on the undisputed facts in favor of APD Defendant Meisinger, could find otherwise. The Court cannot conclude *as a matter of law* that APD Defendant Meisinger reasonably should have known BCSD Defendants, in their efforts to locate Plaintiff, would violate the law. The question of

3

whether APD Defendant Meisinger caused Plaintiff to be subjected to an unreasonable seizure from his home in violation of § 1983, therefore, is a genuine issue of material fact for a jury to resolve.[1]

*Claim II–Arrest*

Plaintiff asserts that even if APD Defendant Meisinger is not liable as a matter of law for setting in motion Plaintiff's unlawful seizure, he is still liable as a matter of law for subsequently arresting Plaintiff without probable cause. APD Defendant Meisinger has continuously argued "he reasonably relied upon the information provided to him by Ms. Santana to form the basis for the probable cause to arrest Plaintiff." Meisinger's argument might hold sway had he been presented with a *rapidly* evolving situation requiring him to *quickly* assess Santana's credibility and *promptly* decide whether to detain Plaintiff. But those are not the facts of this case.

"Probable cause is based on the totality of the circumstances, and requires reasonably trustworthy information that would lead a reasonable officer to believe that the person about to be arrested has committed . . . a crime." Cortez v. McCauley, 478 F.3d 1108, 1116 (10th Cir. 2007) (en banc). "[A] bare allegation of wrongdoing, without any investigation, in some circumstances, may not give rise to probable cause." Id. at 1119. That is why the totality of the circumstances matters. Tenth Circuit precedent establishes that where (1) the putative

---

[1] For the same reason, neither is Plaintiff entitled to summary judgment against APD Defendant Meisinger on his New Mexico state law claims for false arrest and imprisonment insofar as those claims relate to his initial seizure by BCSD Defendants.

4

victim of a crime provides "some reason" to think her recitation of events is not trustworthy, id. at 1121, and (2) a reasonable opportunity for further inquiry presents itself, "the probable cause standard of the Fourth Amendment requires officers to interview witnesses available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." Romero v. Fay, 45 F.3d 1472, 1476–77 (10th Cir. 1995).

In its May 21 order, the Court observed that APD Defendant Meisinger was with the putative victim and complainant, Anna Marie Santana, for approximately 30 minutes after requesting BCSD's assistance in locating Plaintiff. Meisinger knew Santana was of legal age. He also knew she (1) "had disabilities and had a legal guardian" (because she told him so), (2) was unwilling to write her own personal statement, and (3) was not physically incapacitated. A reasonable officer would have suspected Santana might be mentally incapacitated to some degree, placing her credibility in issue. Although APD Defendant Meisinger had ample time and opportunity to inquire into the nature of Santana's guardianship and extent of her competency, he never did so. Meisinger states "Ms. Santana's need for a legal guardian bears no connection to whether her allegations were to be believed in this matter." But how could Defendant Meisinger possibly know this without inquiring into the nature of her guardianship?

The Court also pointed out in its May 21 order that APD Defendant Meisinger took Plaintiff into custody and formally arrested him as soon as he arrived outside Plaintiff's residence. Meisinger never bothered to conduct any investigation or question anyone prior

5

to that arrest despite the fact Plaintiff was going nowhere and Santana was safe.  Plaintiff was handcuffed and sitting in the back seat of a BCSD squad car.  When asked, both Plaintiff and his girlfriend Cinthia Nieto provided the same innocent explanation of his whereabouts that day.  They had been at Cochiti Lake the entire day, and while on their way home that evening they had stopped by Nieto's aunt's house.  Nieto told APD Defendant Meisinger she was with Plaintiff "the whole time."  Plaintiff, to no avail, provided Meisinger a timeline of the day's events and the names and phone numbers of nine individuals who were with him at the lake.  To make matters still worse, Meisinger never bothered to check Santana's easily verifiable yet demonstrably false description of Plaintiff.  Santana reported Plaintiff was her "ex-boyfriend."  Surely she would know Plaintiff's age and physical characteristics.  Yet Santana reported, among other inaccuracies, that Plaintiff was 30 years old and had a "South Side Locos" tattoo on the back of his neck.  In fact, Plaintiff was 48 years old and had no tattoos on his neck or anywhere else.

> Based on the foregoing, the Court concluded:
>
> So what does the totality of the circumstances surrounding Plaintiff's arrest reveal?  First, Defendant Meisinger knew Santana suffered from disabilities and was under a legal guardianship, but failed to inquire.  Second, Defendant Meisinger knew Plaintiff and Nieto provided the same innocent explanation as to Plaintiff's whereabouts prior to and during the commission of the reported crime [but failed to follow up].  Third, Defendant Meisinger knew Santana described Plaintiff in readily verifiable facts [that turned out to be false], but again failed to inquire. . . .  Given these circumstances, did Santana provide Defendant Meisinger with reasonably trustworthy information sufficient to support Plaintiff's arrest?

Applying Tenth Circuit precedent to the record presented, no reasonable jury could find

Santana's criminal report alone established probable cause to arrest Plaintiff.  Considering the totality of the *unique* circumstances presented, the information Santana provided Defendant Meisinger was not reasonably trustworthy.  Slightly paraphrasing, the Court restates a particularly apropos quote from the Tenth Circuit's en banc decision in Cortez:

> [The Court] make[s] no apologies for looking at what information the officer[] possessed against a backdrop of the known progress of [his] investigation, including the steps that had not been taken at the time [Plaintiff] was arrested. The sequence of the investigation that [might have occurred] is plainly part of the facts in this case—and it is clear that the officer[] got ahead of [himself] insofar as arresting [Plaintiff].

Cortez, 478 F.3d at 1121.

For the foregoing reasons as well as for the reasons stated in its May 21 order, Plaintiff's motion for partial summary judgment as to liability against APD Defendant Meisinger is GRANTED IN PART and DENIED IN PART.[2]

                                       Entered for the Court
                                       this 3rd day of September, 2013


                                       Bobby R. Baldock
                                       United States Circuit Judge
                                       Sitting by Designation

---

[2] Insofar as it relates to his arrest subsequent to his initial seizure, Plaintiff's motion for partial summary judgment against Defendant Meisinger as to liability on his state claims for false arrest and false imprisonment based on a breach of statutory and common law duties under New Mexico law is GRANTED.  Under New Mexico law, only an officer "possessed of a good faith *and* reasonable belief in the lawfulness of the action is not liable for false arrest or false imprisonment." Fuerschbach v. Southwest Airlines, Inc., 439 F.3d 1197, 1207 (10th Cir. 2006) (emphasis added).  For the reasons stated, no jury could conclude that APD Defendant Meisinger belief that he had the authority to arrest Plaintiff was reasonable.